MURRAY-BAUMGARTNER SURGICAL INSTRUMENT CO. ET AL. *v.* JOHN M. REQUARDT.

[No. 41, October Term, 1941.]

246

Decided *January 13, 1942.*

The cause was argued before BOND, C. J., SLOAN, JOHNSON, DELAPLAINE, COLLINS, FORSYTHE, and MARBURY, JJ.

*F. Neal Parke* and *Roger A. Clapp,* with whom were *Hersey, Donaldson, Williams & Stanley* on the brief, for the appellants.

*Vernon Cook* and *George Ross Veazey,* for the appellee.

SLOAN, J., delivered the opinion of the Court.

This is a very unusual case. A bill is filed by a stockholder, owning one-half the stock, praying a receivership for a solvent, prosperous corporation. The receivership was denied, but a decree was passed restraining the officers of the corporation from reducing the salary the stockholder had been paid for nearly ten years, from which the corporation and defendant directors appeal.

The Murray-Baumgartner Surgical Instrument Company was incorporated July 30, 1920, with three stockholders and directors, Albert Baumgartner, William M. Murray, and Dr. Wallenstein, each owning twenty-five shares of the par value of $100 per share. The next year, the plaintiff, John M. Requardt, bought the interest of Dr. Wallenstein for $4,500. They increased their holdings to 129 shares each, as it stood until 1928, when Albert Baumgartner died, leaving his stock to his wife. Shortly thereafter William M. Murray and John M. Requardt entered into an agreement to buy Albert Baumgartner's stock from his widow. On December 31, 1930, William M. Murray died, leaving his stock to his wife, Clara M. Murray, which she then valued at $79,980. It was then agreed by Mr. Requardt and Mrs. Murray to have the corporation pay Mrs. Baumgartner for her stock, which was done, and not reissued, leaving Mr. Requardt and Mrs. Murray each owning 129 shares of the stock.

Messrs. Baumgartner and Murray, during the lifetime of the former, managed and directed the business of the corporation, and then until 1931, Mr. Murray did it, and all very successfully.

William M. Murray in his will provided that his stock, if his wife should not survive him six months, would go to his mother. It was not until after Mr. Murray's death that Mr. Requardt took any active part in the business of the corporation, and after the six months' period had

expired, Mrs. Murray, who knew nothing about it until then, became and has continued to be active in the affairs of the corporation, Mrs. Murray becoming president and Mr. Requardt, vice-president. In 1932, the two stockholders adopted by-laws by which the number of directors was increased from three to five, and David E. Abbott, Lewis Miller, and Richard R. Lovelace, non-stockholders and long-time employees, were elected. In 1929 and 1930, William M. Murray was paid a weekly salary of $245 and John M. Requardt, $35; and, in addition, Mr. Murray, in each of the two years drew as additional salary or bonus the sum of $3,350, and Mr. Requardt, $1,850. After some negotiations in 1931, it was agreed between Mrs. Murray and Mr. Requardt that they should take equal salaries, and for nearly ten years they each drew $150 a week, and it so continued until January 13, 1941, when the five directors who had served for ten years were re-elected by the votes of both stockholders. A meeting of the newly elected directors was then held, and to Mr. Requardt's surprise he was voted out of the vice-presidency. David R. Abbott was chosen vice-president, Charles R. Lovelace, treasurer, and Lewis H. Miller, secretary. Mrs. Murray was re-elected president. Mr. Requardt nominated her, but she said she "did not care to serve as president with the present officers," but "had another slate to present, with their approval," her acceptance being conditioned on its adoption, and she then read the names of Messrs. Abbott, Lovelace and Miller for the offices mentioned, and then Mr. Requardt, Mrs. Murray says, at his own suggestion was made chairman of the board, an office not provided for by the charter or by-laws. On January 16, 1941, "The Murray-Baumgartner S. I. Co., By: Clara M. Murray," wrote Mr. Requardt as follows: "Inclosed please find a check for $50 which has been voted as your weekly compensation as serving as Chairman of the Board of the Company. This amount will be mailed to you each Thursday."

About four weeks later, February 15, 1941, the appellee filed his bill of complaint against the Murray-Baumgartner Surgical Instrument Company, a corporation, and the directors, Clara M. Murray, David R. Abbott, Lewis Miller and Richard R. Lovelace, praying:

"(a)  That the defendants, and each and all of them, be enjoined from carrying out their illegal scheme described in the aforegoing bill of complaint and from reducing the plaintiff's salary or permitting the defendant, Clara M. Murray, to receive any salary larger than that of the plaintiff.

"(b)  That in view of the irreconcilible differences between the parties, a receiver or receivers be appointed for said corporation for the purpose of taking full charge of its property, business and affairs in order to insure and protect the equal rights of the plaintiff therein and. to hold and vote the corporate stock under the control of the court.

"(c)  That the receivers be authorized and directed to wind up and liquidate the business in question, under the jurisdiction of this court, and to sell any and all of the assets of the company, including both tangible assets and good will, and to administer the proceeds under the direction of this court.

"(d)  That the Murray-Baumgartner Surgical Instrument Company be dissolved by decree of this court."

After the taking of much testimony, the court decreed:

1.  That the court found in 1931, through their respective counsel, John M. Requardt and Clara M. Murray, each having one-half of the stock of the Murray-Baumgartner Surgical Instrument Company, agreed that thereafter the amounts to be paid to them should be equal, and that subsequent drawings of corporate moneys by them from 1931 to the end of 1940 were always in equal amounts.

2.  That the Murray-Baumgartner Surgical Instrument Company is a corporation and not a partnership and that "the plaintiff, John M. Requardt, and the de-

fendant, Clara M. Murray, are not co-partners either in law- or in equity, but they are the only stockholders of the said corporation."

3. That the court finds that the plaintiff and the four personal defendants were duly elected directors to serve for the ensuing year and until their successors are elected and qualify, and that, on the same day, the directors elected Clara M. Murray, president; David R. Abbott, vice-president; Richard R. Lovelace, treasurer, and Lewis Miller, secretary, and John M. Requardt, chairman of the board.

4. That the action of the president, Clara M. Murray, and the vice-president, David R. Abbott, in continuing the salary of Mrs. Murray at $150 per week and attempting to reduce the weekly salary of Mr. Requardt to $50, and adopted and approved by all of the directors except the plaintiff, was unauthorized, illegal and void and all the defendants be enjoined from making the reduction of the salary to the plaintiff, or permitting the defendant, Clara M. Murray, from receiving any larger salary than the plaintiff.

5. That all directors are only entitled to be paid fees for meetings actually attended.

6. That the relief prayed by prayers (b), (c), (d), *supra*, is denied.

7. The court further decreed:

"(a) The Murray-Baumgartner Surgical Instrument Company shall forthwith pay to John M. Requardt the sum of $100 per week, accounting from January 16, 1941, to the date of this order.

"(b) John M. Requardt is at liberty to cash, and shall promptly cash or deposit the checks for $49.50 a week which have heretofore been sent him by the company, accounting from January 16, 1941, which said checks are now in his possession, but to date have not been used, and which checks represent salary less deduction for Social Security charge.

"(c) That, after the above adjustment has been made, all payments of corporate money to the said John M. Requardt and Clara M. Murray must be equal, except that after January 11, 1941, directors' fees shall be paid only to directors attending the meetings of the board of directors.

"(d) The defendants Clara M. Murray, the Murray-Baumgartner Surgical Instrument Company, its servants, officers and agents, and the defendants David R. Abbott, Lewis Miller and Richard R. Lovelace are each, and all, hereby enjoined and restrained, as prayed in prayer (a) of the bill of complaint:

"(I) from reducing or attempting to reduce the weekly salary from corporate earning to John M. Requardt below the sum of $150 per week,

"(II) from reducing or attempting to reduce the salary from corporate earnings to the said John M. Requardt below the salary paid to the said Clara M. Murray."

Whereupon the defendants appealed, the only adverse decision being that the corporation should restore and pay the plaintiff the weekly salary of $150, which had been agreed upon in 1939, based on the agreement between him and the defendant, Clara M. Murray, in 1931. The plaintiff may have been taken by surprise at the action of the directors, or rather Clara M. Murray, who controlled them, in changing the conditions which had theretofore existed between them, but their conduct is one of ethics, of which we are not called on to express an opinion. The question is the right of a court to interfere in the conduct of the internal affairs of a solvent corporation. The agreement or understanding between them was one which might have been effectual as between partners, but not between each of them and the corporation. The chancellor, in this case, has decreed that the defendant corporation is a corporation and not a partnership, despite the equal ownership of stock between the plaintiff and Mrs. Murray, although they have, for ten years, treated the corporation as their personal property.

This court is precluded from passing upon the question of whether it is a corporation or a partnership, as the plaintiff has not appealed from that part of the decree which only leaves open that part of the decree which is confined to the agreement of 1931 which gives them equal participation in the profits or income of the corporation.

A great part of the record is made up of the history of the corporation, and particularly the personal relations of the stockholders, three in the first ten years, and two since the death of Albert Baumgartner, since which time there have been only two persons interested. It was held by the chancellor that it is a corporation, and we are, therefore, confined to it as a corporate entity. It has been held in this as in most courts, that we cannot pass upon or interfere with the internal management of a corporation, unless, of course, its corporate acts are fraudulent, illegal, or *ultra vires*. The rule as held by this court is as stated or repeated in *Powers Foundry Co. v. Miller*, 166 Md. 590, 595, 171 A. 842, 845: "Mere internal dissensions among stockholders, or mere differences or disputes as to corporate management, so long as the officers or stockholders do no act that is fraudulent, illegal or *ultra vires* will not warrant the intervention of a court of chancery, because, in the absence of fraud, illegality or conduct that is *ultra vires*, the will of the majority is entitled to control the policy and the business of the body corporate." *Du Puy v. Transportation & Terminal Co.*, 82 Md. 408, 33 A. 889, 890, 34 A. 910; *Callaway v. Powhatan Imp. Co.*, 95 Md. 177, 185, 52 A. 916; *Howeth v. Coulbourne Bros. Co.*, 115 Md. 107, 117, 80 A. 916; 1 *Clark on Receivers*, Sec. 223. "So long as the majority, acting in good faith, are in favor of going on, the minority shareholders are without remedy, although bankruptcy may probably be the consequence of continuing." *France on Corporations*, Sec. 163.

Although this is not a contest between majority and minority stockholders, in view of the decree of the chancellor, and not appealed from, the payment for ten years

of the salary of $150 per week to the appellant and the defendant, Clara M. Murray, was in payment of their respective salaries as vice-president and president of the corporation. For all the value to the corporation, it was not, in fact, in consideration of the contribution of either of them to its success, but was a division of profits. Stockholders are always compensated in proportion to their stockholdings, while services, theoretically at least, are on the basis of the value of the services rendered. The plaintiff could not claim this salary as director, as the plaintiff and Mrs. Murray, for four years, to the end of 1940, had taken $960 each. It having been determined that this is a corporation and not a partnership, the only theory on which the plaintiff could claim compensation, other than as a stockholder, was salary of a vice-president. Having been voted out of that position, his claim to its salary went with it.

This is not the case of a deadlocked corporation. A deadlocked corporation is one which, because of the decision or indecision of the stockholders, cannot perform its corporate powers. In this case, the corporation is functioning; it regularly elected a board of directors, and with the concurrence of the plaintiff, who apparently never suspected what he was doing to himself or was being done to him. His faith may have been violated and his confidence betrayed, but there is nothing this court can do about it, and the decree appealed from must be reversed in so far as it undertakes to fix the salary or compensation to be awarded the plaintiff, and the injunction must be dissolved.

*Decree reversed and injunction dissolved, with costs.*